**In the United States District Court
for the Northern District of Texas
Dallas Division**

| | |
|---|---|
| **Ronald Wright,**  *On behalf of himself and those similarly situated*,  Plaintiff,  v.  **Bam! Pizza Management, Inc.; Brian Bailey; Doe Corporation 1-10; John Doe 1-10;**  Defendants. | Case No. 3:21-cv-1655  Judge  Magistrate Judge  **Jury Demand Endorsed Hereon** |

**FLSA Collective Action Complaint**

1. Ronald Wright, on behalf of himself and similarly-situated individuals, brings this action against Defendants Bam! Pizza Management, Inc.; Brian Bailey; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

2. Defendants own over 100 Domino's stores located in Texas, New Mexico, and Colorado ("Defendants' Domino's stores").

3. Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' Domino's stores.

**ORIGINAL COMPLAINT**

4. Defendants repeatedly and willfully violated the Fair Labor Standards Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5. All delivery drivers at the Defendants' Domino's stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## Jurisdiction and Venue

6. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

### Plaintiff

### Ronald Wright

8. Plaintiff Ronald Wright is a resident of Texas.

9. Plaintiff was an "employee" of the Defendants as defined in the FLSA.

10. Plaintiff has given written consent to join this action.

### Defendants

### Bam! Pizza Management, Inc.

11. Defendant Bam! Pizza Management, Inc. is a domestic corporation authorized to do business under the laws of Texas.

12. Bam! Pizza Management, Inc. is the entity that operates the Defendants' Domino's stores.

13. Upon information and belief, Bam! Pizza Management, Inc. owns over 100 stores in Texas, New Mexico, and Colorado.

14. Bam! Pizza Management, Inc. was the entity that appeared on Plaintiff's paystubs for work he completed for Defendants' Domino's stores.

15. Bam! Pizza Management, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

16. Bam! Pizza Management, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

17. At all relevant times, Bam! Pizza Management, Inc. maintains control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

18. Bam! Pizza Management, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

19. At all relevant times, Bam! Pizza Management, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

20. Bam! Pizza Management, Inc.'s gross revenue exceeds $500,000 per year.

**Brian Bailey**

21. Defendant Brian Bailey is the owner of Bam! Pizza Management, Inc. and the Defendants' Domino's stores.

22. Brian Bailey is the President of Bam! Pizza Management, Inc.

23. Brian Bailey is the owner of the Bam! Pizza Management, Inc.

24. Brian Bailey operates over 100 stores in Texas, New Mexico, and Colorado.

25. Brian Bailey is individually liable to the delivery drivers at the Defendants' Domino's stores under the definitions of "employer" set forth in the FLSA because he owns and operates the Defendants' Domino's stores, serves as a president and owner of Bam! Pizza Management, Inc., ultimately controls significant aspects of the Defendants' Domino's stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

26. Brian Bailey is the franchisee of the Defendants' Domino's stores.

27. At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had financial control over the operations at each of the Defendants' Domino's stores.

28. At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has a role in significant aspects of the Defendants' Domino's stores' day to day operations.

29. At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had control over the Defendants' Domino's stores' pay policies.

30. At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had power over personnel and payroll decisions at the Defendants' Domino's stores, including but not limited to influence of delivery driver pay.

31. At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Domino's stores.

32. At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Domino's stores.

33. At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to transfer the assets and liabilities of the Defendant entities.

34. At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to declare bankruptcy on behalf of the Defendant entities.

35. At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to enter into contracts on behalf of each of the Defendants' Domino's stores.

36. At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to close, shut down, and/or sell each of the Defendants' Domino's stores.

37. At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

38. The Defendants' Domino's stores function for Brian Bailey's profit. Brian Bailey had influence over how the Defendants' Domino's stores can run more profitably and efficiently.

**Doe Corporation 1-10**

1. Upon information and belief, Defendants own, operate, and control other entities and/or corporations that also comprise part of the Defendants' Domino's stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA.

2. Upon information and belief, Brian Bailey owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' Domino's stores operation.

3. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

4. Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA.

5. Upon information and belief, Brian Bailey has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA.

6. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## Facts

### Class-wide Factual Allegations

7. During all relevant times, Defendants have operated the Defendants' Domino's stores.

8. Plaintiff, and the similarly situated persons Plaintiff seeks to represent, are current and former delivery drivers at the Defendants' Domino's stores.

9. All delivery drivers employed at the Defendants' Domino's stores over the last three years have had essentially the same job duties.

10. When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Domino's stores cleaning up dishes, sweeping, making boxes, filling the ice container, and completing other duties inside the restaurant, as necessary.

11. Plaintiff and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked on the road for Defendants' Domino's stores.

12. The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

13. Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

14. The delivery drivers at the Defendants' Domino's stores work "dual jobs."

15. Defendants require delivery drivers at Defendants' Domino's stores to provide cars to use while completing deliveries for Defendants.

16. Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

17. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

18. Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

19. The Defendants' Domino's stores reimburse their delivery drivers based on a flat rate per delivery.

20. Defendants' reimbursement payments have no connection to the actual expenses incurred by the delivery drivers.

21. The Defendants' Domino's stores do not track or record the delivery drivers' actual expenses.

22. The Defendants' Domino's stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

23. The Defendants' Domino's stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

24. The Defendants' Domino's stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

25. The Defendants' Domino's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

26. The Defendants' Domino's stores did not reasonably approximate the delivery drivers' expenses.

27. Plaintiff and similarly situated delivery drivers typically averaged 3 miles per round-trip delivery.

28. The Defendants' Domino's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

29. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a. 2018: 54.5 cents/mile
    b. 2019: 58 cents/mile
    c. 2020: 57.5 cents/mile
    d. 2021: 56 cents/mile

30. The delivery drivers at the Defendants' Domino's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

31. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA.

32. Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Domino's stores.

33. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

34. Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

35. Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R.§ 531.59.

36. Defendants have willfully failed to pay federal and Texas state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Domino's stores.

### Plaintiff's Individual Factual Allegations

37. Plaintiff worked at the Domino's store located on Oak Lawn Ave. in Dallas, TX from approximately 2014 through 2021.

38. Plaintiff was paid minimum wage minus a tip credit for all hours worked while delivering.

39. When Plaintiff was not delivering food, he worked inside the restaurant. His work inside the restaurant included route drivers, stocking coke coolers, sweeping, and completing other duties inside the restaurant as necessary.

40. Plaintiff worked dual jobs.

41. Plaintiff's inside duties were not related to his delivery duties.

42. Plaintiff was paid minimum wage for the hours he worked inside the store.

43. Plaintiff was required to use his own car to deliver pizzas.

44. Plaintiff was reimbursed $.65 per delivery.

45. Defendants' reimbursement policy resulted in Plaintiff usually receiving approximately $.21 per mile, on average.

46. Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

47. Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

48. Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

49. Defendants did not track the actual expenses incurred by Plaintiff.

50. Defendants did not ask Plaintiff to provide receipts of the expenses he incurred while delivering pizzas for Defendants.

51. Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

52. Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

53. Defendants did not reimburse Plaintiff based on a reasonable approximation of his expenses.

54. In 2019, for example, the IRS business mileage reimbursement has been $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff by $.37 per mile ($.58 - $.21). Consider Plaintiff's estimate of 3 miles per delivery, Defendants under-reimbursed him $1.11 per delivery ($.37 x 3 miles), and $2.78 per hour (2.5 deliveries per hour).

55. Defendants failed to properly inform Plaintiff of the requirements for taking a tip credit.

56. Defendants failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants took more of a tip credit than they informed Plaintiff they would be taking.

57. Defendants failed to pay Plaintiff minimum wage as required by law.

### Collective Action Allegations

58. Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Defendants' Domino's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

59. At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked

and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

60. Defendants' unlawful conduct is pursuant to a company policy or practice.

61. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

62. Defendants are aware or should have been aware that they are not permitted to pay employees a tipped wage rate for hours worked in a non-tipped capacity.

63. Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiff and other delivery drivers that they would pay.

64. Defendants are aware or should have been aware that federal law requires them to meet certain requirements for taking a tip credit from the wages of their employees.

65. Defendants' unlawful conduct has been widespread, repeated, and consistent.

66. The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

67. The FLSA Collective members are readily identifiable and ascertainable.

68. In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

69. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

70. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

71. Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

72. Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

73. Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

74. Defendants required and continue to require Plaintiff and the FLSA Collective to work in a non-tipped capacity while being paid a tipped wage rate.

75. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

76. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

77. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**WHEREFORE**, Plaintiff Ronald Wright prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C. An award of unpaid minimum wages and unreimbursed expenses due under the FLSA.

D. Liquidated damages under the FLSA.

E. An award of prejudgment and post-judgment interest.

F. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

G. Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ David W. Henderson*
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
David W. Henderson
Texas State Bar No. 24032292
dhenderson@equalrights.law
Ellwanger Law LLLP
8310-1 N. Capital of Texas Hwy, Ste. 190
Austin, Texas 78731
Telephone: (214) 948-3334
Facsimile: (214) 853-9410

*/s/ Nathan Spencer*
Andrew R. Biller (*pro hac vice forthcoming*)
Andrew P. Kimble (*pro hac vice forthcoming*)
Nathan B. Spencer (*pro hac vice forthcoming*)
Philip J. Krzeski (*pro hac vice forthcoming*)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*nspencer@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

***Counsel for Plaintiff and the putative class***

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

>    */s/ Nathan Spencer*
>    Nathan B. Spencer